UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARCIA COPELAND, M.D.,

    Plaintiff,

v.

TOWNSHIP OF BELLMAWR, STATE
OF NEW JERSEY, ATTORNEY
GENERAL OFFICE OF THE STATE
OF NEW JERSEY, GOVERNOR'S
OFFICE (NJ), JIM BRALEY,
MAYOR OF BELLMAWR, JSC MARY
EVA COLALILLO, JSC DEBORAH
SILVERMAN KATZ, JSC ROBERT
MILLENKY, ROBERT SALDUTTI,
ESQ., ADVISORY COMMITTEE ON
JUDICIAL CONDUCT, LISA
SHARKEY, JUDGE ANTHONY
PUGLISI, ANDREW KARCICH,
ESQ., SCOTT LEVINE, ESQ., and
MARTY ABO,

    Defendants.

1:17-cv-12104-NLH-JS

**OPINION**

**APPEARANCES:**

MARCIA COPELAND, M.D.
2 APPLE RIDGE WAY
EAST BRUNSWICK, NJ 08816
    Plaintiff appearing *pro se*

JEFFREY S. CRAIG
KELLEY, WARDELL, CRAIG, ANNIN & BAXTER, LLP
41 GROVE STREET
HADDONFIELD, NJ 08033
    On behalf of the Bellmawr Defendants

MELIHA ARNAUTOVIC
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING

```
PO BOX 116
TRENTON, NJ 08625
```
    On behalf of Defendants the State of New Jersey, Attorney General Office, JSC Mary Eva Colalillo, JSC Deborah Silverman Katz, JSC Robert Millenky, Advisory Committee on Judicial Conduct, Judge Anthony Puglisi

```
REBECCA K. MCDOWELL
SALDUTTI LAW GROUP
800 N KINGS HIGHWAY
SUITE 300
CHERRY HILL, NJ 08034
```
    On behalf of Defendant Robert Saldutti, Esquire

```
MEREDITH KAPLAN STOMA
MORGAN MELHUISH ABRUTYN
651 W. MOUNT PLEASANT AVENUE
LIVINGSTON, NJ 07039-1673
```
    On behalf of Defendants Lisa Sharkey and Marty Abo

```
FARDENE E. BLANCHARD
LYNCH & KARCHICH LLC
1000 WHITE HORSE ROAD
SUITE 703
VOORHEES, NJ 08043
```
    On behalf of Defendant Andrew Karcich, Esquire

```
MELISSA J. KANBAYASHI
MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, PC
CHERRY TREE CORPORATE CENTER
535 RT. 38 EAST
SUITE 501
CHERRY HILL, NJ 08002
```
    On behalf of Defendant Scott Levine, Esquire

**HILLMAN**, District Judge

This is the fifth federal court action filed by Plaintiff, Marcia Copeland, M.D., concerning a state court default judgment entered against her in February 2012.[1] Plaintiff's fourth

---

[1] After Plaintiff filed this action, Plaintiff filed a sixth action regarding the February 2012 default judgment - COPELAND v. STATE OF NEW JERSEY, 1:18-cv-10554-NLH-JS ("Copeland VI").

federal court action, filed in May 2015, provides a summary of Plaintiff's litigation efforts up until that point:

> This case has a long history in state and federal court. In 2009, Plaintiff Marcia Copeland hired attorney Scott Levine to pursue a case against GRP Financial Services Corp. Abo & Co. was hired to provide expert testimony in that case. Plaintiff was dissatisfied with Abo & Co.'s services, and felt she had "no business paying for it." Abo & Co. then retained attorney Andrew Karcich and filed a claim for arbitration against Plaintiff with the American Arbitration Association. Plaintiff chose not to participate in arbitration. On January 14, 2011, an arbitration award was entered in favor of Abo & Co. for $49,777.88. Abo & Co. sought to enforce their award, and the Superior Court entered a default judgment against Plaintiff. Plaintiff later attempted to have the default judgment vacated, but her motion was denied by Judge Deborah Silverman-Katz. Because of their roles in these events, Judge Silverman-Katz, Mr. Levine, and Mr. Karcich are now named defendants in this action, along with Abo & Co.
>
> Abo & Co. continued to seek payment of the arbitration award through legal action. They were unsuccessful until two years later, when Judge Mary Eva Colalillo appointed Robert Saldutti, Esq. as a receiver to collect rental income from Plaintiff's rental properties. Plaintiff has also named Mary Eva Colalillo and Mr. Saldutti as defendants in the present action.
>
> In 2013, Plaintiff began aggressively pursuing her legal options to fight the collection of Abo & Co.'s arbitration award. She filed various motions in response

---

Plaintiff's previous actions concerning the same default judgment are: COPELAND v. ABO & COMPANY, LLC, 1:13-cv-03978-RMB-KMW ("Copeland I"); 1:13-cv-03979-RMB-KMW ("Copeland II"); 1:13-cv-04232-RMB-AMD ("Copeland III"); and COPELAND v. UNITED STATES DEPARTMENT OF JUSTICE, 3:15-cv-07431-AET-TJB ("Copeland IV"). Plaintiff has filed other actions arising out of different properties, although Plaintiff's claims appear to be of a similar genre. See COPELAND v. TOWNSHIP OF PENNSAUKEN, 1:14-cv-02002-RMB-AMD; COPELAND v. NEWFIELD BANK, 1:17-cv-00017-NLH-KMW; COPELAND v. US BANK, 1:18-cv-00019-NLH-KMW.

3

to Abo & Co.'s enforcement action against her.  She
attempted to revive a suit she had filed in 2011 against
Abo & Co., Mr. Levine, Mr. Karcich, and the American
Arbitration Association.  She filed a complaint with the
New Jersey Board of Accountancy against Mr. Abo.  She filed
three different complaints in the District of New Jersey.
None of these actions were successful.

   In 2015, Plaintiff, along with trustee Minta Smith,
filed the present Complaint in the Southern District of New
York.  Plaintiff's Complaint alleges violations of a range
of constitutional amendments, criminal statutes, civil
statutes, and jurisdictional statutes, all apparently
stemming from Judge Colallilo's appointing a receiver to
collect rental income from Plaintiff's rental properties.
Many of Plaintiff's claims are identical to her 2013 claims
that were previously dismissed under Rule 12(b)(6) in the
District of New Jersey by Judge Renee Marie Bumb.  In
addition to a few new claims, there are several new
defendants, including Judge Bumb.  Several defendants
previously moved to dismiss this Complaint.  On October 5,
2015, Judge Vincent Briccetti held that the Southern
District of New York was not the proper venue for this
case, and transferred it to the District of New Jersey.
Plaintiff moved for reconsideration, which was denied.

<u>Marcia Copeland v. United States Department of Justice</u>, 3:15-cv-

07431-AET-TJB, 2015 WL 9294810, at *1-2 (D.N.J. 2015) (Thompson,

J.) ("<u>Copeland IV</u>").

   Judge Thompson dismissed Plaintiff's case on the bases of

4

judicial immunity,[2] res judicata,[3] New Jersey's entire

---

[2] Judges are generally "'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Mireles v. Waco, 502 U.S. 9, 9 (1991); Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536 (1868) ("This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice.")). Judicial immunity is not overcome by allegations of bad faith or malice. Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Pierson v. Ray, 386 U.S. 547, 553–54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (internal citations and quotations omitted)). A judge's immunity from civil liability "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citation and quotations omitted). Judge Thompson determined that the judicial defendants were entitled to judicial immunity because all of Plaintiff's claims against them arose from the judge's actions in their judicial capacities. Copeland IV, 2015 WL 9294810, at *4 n.8. Because Plaintiff makes the same allegations against the judicial defendants in this case as she did in her prior cases, the judicial immunity doctrine is similarly applicable here.

[3] Res judicata encompasses claim and issue preclusion. U.S. v. 5 Unlabeled Boxes, 572 F.3d 169, 174 (3d Cir. 2009) (quoting Venuto v. Witco Corp., 117 F.3d 754, 758 n.5 (3d Cir. 1997). ("Collateral estoppel customarily refers to issue preclusion, while res judicata, when used narrowly, refers to claim preclusion. This court has previously noted that 'the preferred usage' of the term res judicata 'encompasses both claim and issue preclusion.'"). Claim preclusion requires a showing that there has been (1) a final judgment on the merits in a prior

5

controversy doctrine,[4] the Rooker-Feldman doctrine,[5] and

---

suit involving (2) the same claim and (3) the same parties or their privies. Id. (citation omitted). Collateral estoppel requires of a previous determination that (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. Id. (citation omitted). Judge Thompson determined that Plaintiff's complaint was barred under both claim and issue preclusion because Plaintiff's complaint met all the elements of both doctrines. Copeland IV, 2015 WL 9294810, at *3. Because Plaintiff's claims in this case are identical to her prior cases, the same analysis applies here.

[4] New Jersey's entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. New Jersey Mfrs. Ins. Co., 110 A.3d 19, 27 (N.J. 2015) (citations and quotations omitted). The purpose of the entire controversy doctrine "are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Id. (citations and quotations omitted). Judge Thompson held that the entire controversy doctrine barred Plaintiff's claims, including the claims against new defendants, because Plaintiff did not explain why the new parties had been added at that late date, other than the addition of Judge Bumb, which was self-explanatory since Plaintiff added Judge Bumb after she dismissed Plaintiff's claims. Copeland IV, 2015 WL 9294810, at *4. The same holds true here, where Plaintiff does not explain why her claims against the Bellmawr Defendants had not been advanced in any of her prior cases.

[5] Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's

Plaintiff's failure to state any cognizable claims.[6]  Id. at 3-5.
Plaintiff appealed that decision, which was affirmed in all
respects by the Court of Appeals for the Third Circuit.
Copeland v. United States Department of Justice, 675 F. App'x

---

decision in a judicial proceeding.  Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept., 973 F.2d 169, 177 (3d Cir. 1992); In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) ("The Rooker-Feldman doctrine prevents 'inferior' federal courts from sitting as appellate courts for state court judgments.").  Judge Thompson found that the Rooker-Feldman doctrine warranted the dismissal of Plaintiff's claims because Plaintiff explicitly asked the court to revisit her state court judgments by finding error in the state court judges' decisions.  Copeland IV, 2015 WL 9294810, at *3.  Plaintiff has asked for the same relief in this case.  Thus, the Rooker-Feldman doctrine is implicated here as well warranting dismissal of Plaintiff's claims.

[6] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Judge Thompson found that the complaint did not make clear which of the nineteen claims were meant to apply to which of the twenty-four defendants, and many of Plaintiff's claims cited criminal statutes that private citizens may not sue under. Copeland IV, 2015 WL 9294810, at *4.  Plaintiff's complaint here details alleged violations by the various Defendants, but Plaintiff fails to connect her claims with the legal bases for their liability.  She also claims that Defendants violated several criminal statutes that provide no private cause of action.

7

166, 168 (3d Cir. January 13, 2017).[7]  Plaintiff filed a petition for writ of certiorari with the U.S. Supreme Court, but it was denied as filed out of time.  Copeland v. Department of Justice, 138 S. Ct. 419 (Mem) (U.S. 2017).

Plaintiff's current case here is a repeat of her prior litigation.  The only difference the Court discerns between her other cases and this one is the addition of the Borough of Bellmawr, Bellmawr's mayor, and Bellmawr's zoning officer as defendants – Bellmawr is the location of the property for which the state court appointed a receiver to collect rents to satisfy the default judgment entered against Plaintiff.

---

[7] In her appeal in Copeland IV, the only substantive argument Plaintiff made was that the preclusion doctrines relied upon by Judge Thompson to dismiss her claims "had no application."  The Third Circuit disagreed, explaining: "The only specific argument she raises in that regard is that she never previously asserted a RICO claim.  Copeland, however, has made no effort to identify the basis for her RICO claim or claims or to differentiate them from the numerous claims of fraud that she asserted numerous times before.  Merely asserting a new theory of recovery does not by itself save a previously litigated claim from preclusion.  To the extent that Copeland's RICO claims are based on her claim that her underlying debt, the state-court judgments and the receivership are fraudulent (as it appears those claims must be), they are barred by Copeland's previous actions in both state and federal court for the reasons that the District Court explained.  To the extent that they are based on anything else, Copeland has not pleaded any plausible claim to relief."  Copeland, 675 F. App'x at 172 (citations omitted).  This Court finds that the Third Circuit's analysis equally applies to Plaintiff's current action here, which also attempts to assert claims under RICO, in addition to the regurgitated claims from her previous cases.

All of the defendants have moved to dismiss her claims. The Defendants who have been sued before have moved to dismiss Plaintiff's claims for the same reasons Plaintiff's prior claims were dismissed in the state court and in this court. The Bellmawr defendants have moved to dismiss Plaintiff's claims on numerous bases, including being time-barred and non-compliant with the New Jersey Tort Claims Act, as well as on the basis of immunity to suit.

Plaintiff has not filed oppositions to the Defendants' motions to dismiss, except for the motion of Defendant Robert Saldutti, Esq., the receiver appointed by the state court to collect rental income from Plaintiff's rental properties to satisfy the default judgment entered against her in favor of Abo & Co. In her opposition to Saldutti's motion, Plaintiff does not address the legal basis for the dismissal of her claims as argued by Saldutti but instead challenges the validity of the underlying contract with Abo & Co., the agreement she was previously adjudged to have breached.

Plaintiff has also filed almost a dozen motions of her own. Most of those motions have already been resolved by Magistrate Judge Joel Schneider during an in-person hearing with all the parties. (See July 11, 2018, Docket No. 88.) Still pending is Plaintiff's motion for summary judgment and motion for "miscellaneous relief" she filed contemporaneous with

9

Defendants' motions to dismiss, as well as two other miscellaneous motions filed in the past two weeks.

Also pending is the motion for sanctions filed by Defendants Marty Abo and Lisa Sharkey. (Docket No. 18.) These Defendants argue that Plaintiff's repetitive, frivolous and baseless litigation over many years has harassed and stigmatized them, and they seek reimbursement of attorneys' fees and other appropriate sanctions. These Defendants argue that sanctions are particularly important here, where the same claims against them had been dismissed with prejudice, but undeterred, Plaintiff filed yet another suit against them.[8]

Although they have not filed formal motions for sanctions, the other Defendants have requested that the Court enjoin Plaintiff from continuing to pursue these claims in the future. Plaintiff has not filed an opposition directly in response to the motion for sanctions, and she has not addressed the other Defendants' requests that the Court issue a litigation preclusion order against her.

Because the viability of Plaintiff's claims in this case

---

[8] In Plaintiff's case before Judge Thompson, Abo and Sharkey requested that the court permanently enjoin Plaintiff from filing future civil complaints against them. Judge Thompson declined to do so at that time, but stated, "Plaintiff shall be on notice that submitting any further filings related to the same underlying facts may result in an appropriate injunction or sanctions against her." Copeland IV, 2015 WL 9294810, at *5.

have already been assessed several times in lengthy and comprehensive opinions in this Court and before the Third Circuit, and because Plaintiff has not opposed substantively any of the Defendants' bases for the dismissal of her claims, the Court will adopt the decisions in Copeland I-IV, and dismiss Plaintiff's claims against all the Defendants – except for the Bellmawr Defendants – for the same reasons expressed in those cases.[9]

For the newly added Bellmawr Defendants, against whom Plaintiff alleges a type of conspiracy with the other defendants to deprive Plaintiff of her property at the time of the receivership order in February 2013, the Court finds that Plaintiff's claims, to the extent that they are not independently dismissible for insufficient pleading, are time barred under the entire controversy doctrine,[10] the two-year statute of limitations for her claims, and for non-compliance with the New Jersey Tort Claims Act. See Moore v. Middlesex County Prosecutors Office, --- F. App'x ---, 2018 WL 2750237, at *3 (3d Cir. June 7, 2018) (citing Dique v. N.J. State Police,

---

[9] This decision is equally applicable to Plaintiff's sixth action regarding the February 2012 default judgment, COPELAND v. STATE OF NEW JERSEY, 1:18-cv-10554-NLH-JS ("Copeland VI"), which was filed in June 2018, six months after this case. The Court will issue a separate Order in that case, where Defendants have pending motions to dismiss.

[10] See, supra, note 4.

603 F.3d 181, 185 (3d Cir. 2010)) ("The statute of limitations for § 1983 claims arising in New Jersey is two years."); Caban v. City of Newark, 2018 WL 2427124, at *4 (D.N.J. May 30, 2018) (citing Michaels v. State of N.J., 955 F. Supp. 315, 326 (D.N.J. 1996) (holding that "[b]ecause the City of Newark is a public entity within the meaning of the New Jersey Tort Claims Act . . . all of plaintiff's state law claims asserted against it . . . are subject to the Act's two-year statute of limitations") (quoting N.J.S.A. 59:8-8(b)); Ewing v. Cumberland County, 152 F. Supp. 3d 269, 296 (D.N.J. 2015) (citing N.J.S.A. 59:8-8) (explaining that the NJTCA requires notice of a claim of injury against a public entity to be presented within ninety days of the accrual of the cause of action, and if the plaintiff fails to do so, he is barred from recovering damages).

With the dismissal of all of Plaintiff's claims against all the Defendants, Plaintiff's pending summary judgment motion and other motions for miscellaneous relief are now moot.[11] The

---

[11] Because of the substantive doctrines that strictly bar Plaintiff's claims, no amendment can cure her deficient claims, and therefore it would be futile to permit amendment. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (explaining that even though Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim," this Court must only do so unless it would be "inequitable or futile").

remaining issues are whether the Court should grant Abo and Sharkey's motion for sanctions, and whether the Court should enjoin Plaintiff from filing these same claims against these defendants in the future without first seeking leave of court to do so.

The "federal court system is not a playground to be used by litigants for harassing those they dislike." Gilgallon v. Carroll, 153 F. App'x 853, 855 (3d Cir. 2005). The court system is not available for "recreational litigation." See Marrakush Soc. v. New Jersey State Police, 2009 WL 2366132, *36 (D.N.J. July 30, 2009) (explaining that a "'recreational litigant' is the 'one who engages in litigation as sport and files numerous complaints with little regard for substantive law or court rules.'" (quoting Jones v. Warden of the Stateville Correctional Ctr., 918 F. Supp. 1142, 1153 (N.D. Ill. 1995) (noting that, "[w]hen confronted with [a] recreational plaintiff, courts, to protect themselves and other litigants, have enjoined the filing of further case without leave of court") (other citations omitted)).

It is well within the broad scope of the All Writs Act, 28 U.S.C. § 1651(a), for a district court to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints aim to subject defendants to unwarranted harassment, and raise concern for maintaining order in the

court's dockets.  Telfair v. Office of U.S. Attorney, 443 F. App'x 674, 677 (3d Cir. 2011) (citing In re Oliver, 682 F.2d 443, 445 (3d Cir. 1982)).  A "district court has authority to require court permission for all subsequent filings once a pattern of vexatious litigation transcends a particular dispute."  Id. (citation omitted).  Before a court issues a litigation preclusion order, the court must give notice to the litigant to show cause why the proposed injunctive relief should not issue.  Id. (citing Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)).

In addition to her efforts in state court, Plaintiff has filed six federal court cases regarding her claims that a 2012 default judgment was erroneously entered against her based on a faulty contract, and that the state court orders assigning a receiver to collect rent on Plaintiff's property to satisfy the judgment were improper under the law.  For the reasons summarized above and detailed in prior decisions, all of Plaintiff's claims have been unavailing for numerous reasons.  None of these decisions has deterred Plaintiff from continuing to pursue her unmeritorious claims, however, even after Judge Thompson's dismissal of her claims in Copeland IV was "with prejudice," and the Third Circuit affirmed that decision.

The Court finds that the history of this case and Plaintiff's unrelenting efforts to relitigate a 2012 state court

14

judgment by filing numerous, repetitive, and unmeritorious lawsuits in both state and federal court against any and all parties involved appears to warrant the imposition of sanctions in the form of a litigation preclusion order.[12]

Consequently, the Court will direct Plaintiff to show cause as to why this Court should not enter a preclusion order and enjoin Plaintiff from filing any claims in this District regarding the subject matter of this case without prior permission of the Court.

## **CONCLUSION**

For the reasons expressed above, Defendants' motions to dismiss Plaintiff's complaint will be granted. Plaintiff's claims against all Defendants will be dismissed with prejudice. Plaintiff's pending motions will be denied as moot. Plaintiff will be directed to show cause within fifteen days as to why this Court should not enter a preclusion order enjoining

---

[12] Defendants' Abo and Sharkey's motion for sanctions will be granted in part in that the Court will issue an Order to Show Cause as to why a preclusion order should not be entered and denied in part without prejudice as to monetary sanctions. If the Court were to grant Abo and Sharkey's request for the reimbursement of their attorneys' fees expended to defend themselves against Plaintiff's claims against them, the reasoning for granting such a request would also support, in equity, the reimbursement of attorneys' fees for all of the other Defendants who have been subjected to the same repetitive litigation. A litigation preclusion order will serve to protect all Defendants equally from Plaintiff's continuing attempts to pursue the same claims against them in the future.

Plaintiff from filing any future claims in this District regarding the subject matter of this case without prior permission of the Court.  An appropriate Order will be entered.


Date:　August 7, 2018　　　　　　　　s/ Noel L. Hillman
At Camden, New Jersey　　　　　　　　NOEL L. HILLMAN, U.S.D.J.